will be called as posted and the times will be as allotted to counsel. The first case today is number 161567, United States v. Alex Levin. Ms. Lawrence, good morning. Good morning, Judge Serena, and may it please the Court. Kelly Lawrence for the United States. I'd like to reserve two minutes for rebuttal, please. The District Court erred when it suppressed evidence of child pornography found on the defendant's computer. That suppression ruling should be reversed for three reasons. First, the warrant authorizing the FBI's use of a Network Investigative Technique, or NIT, to locate and identify anonymous users of the hidden child pornography website Playpen was properly issued pursuant to Federal Rule of Criminal Procedure 41b-4. Second, the NIT warrant complied with the Fourth Amendment's warrants requirements. It was supported by probable cause, sufficiently particular, and issued by a neutral and detached magistrate. Therefore, even assuming Rule 41b-4 did not authorize the NIT warrant, the violation was a non-constitutional technical mistake of venue for which suppression is not appropriate. And third, even assuming a prejudicial or substantive violation of Rule 41, the evidence of child pornography found on the defendant's computer is admissible pursuant to the good-faith exception to the exclusionary rule. The FBI agents properly sought and were granted judicial approval to use the NIT, and their objectively reasonable reliance should lead to the admissibility of the evidence. The harm to society and the justice system from suppressing reliable evidence of child pornography, sexual abuse, and exploitation far outweighs any possible benefit from deterring law enforcement misconduct, which in this case was nonexistent. The District Court's first error in this case was to find that the magistrate judge exceeded her authority under Rule 41b. Rule 41b-4 permitted the magistrate judge to issue a warrant, the NIT warrant in this case, which allows the installation of a tracking device in the district that can be monitored outside of the district. I thought 41b-4 applied to the tracking of persons or property. I'm sorry, Your Honor, does it apply to... I thought 41b-4 applied to a tracking device for the tracking of persons or property. Yes, and we contend that property in this case may be intangible property, such as information. That interpretation, I believe, is supported by the rule. Ms. Lawrence, you have a limited period of time. Could you turn to your third argument and respond to your opponent's critiques of whether the good-faith exception applies here? Yes, Your Honor, the good-faith exception applies here because the agents in this case, the FBI, acted in all ways consistent with their obligations. They did the right thing. They submitted a detailed affidavit explaining how the NIT would be used, stating the basis for probable cause, and they submitted this affidavit to a federal magistrate judge in the district with the strongest known connection to the crimes under investigation. They had, prior to submitting this affidavit, obtained judicial approval to use NITs in other cases, and they reasonably believed that this was a valid warrant that could be issued by this magistrate judge. When they obtained judicial approval of the warrant, they executed it within its scope, and they did not do anything, and there's nothing in the record to suggest that there was any deliberate deception or intentional misconduct. Under these circumstances, where there is no law enforcement misconduct involved, let alone any egregious or particularly culpable misconduct, the good-faith exception applies. The evidence should still be admissible even if the court were to find that Rule 41B did not authorize the issuance of the warrant or even if there was a constitutional violation, neither of which the government contends is present in this case. How does the severity of the mistake weigh in the calculus? According to the Supreme Court's more recent jurisprudence in the good-faith area, the law enforcement misconduct must be egregious in the sense that it can't be an innocent mistake. It has to be something deliberate and culpable so that the harsh remedy of exclusion... So even a very serious, hard-to-understand mistake, so long as it is innocent, is eligible for the good-faith exception? That's the government's view? It could be, and the government's view. Haring supports that proposition in the sense that it was a serious mistake committed by law enforcement in entering an invalid warrant into the system that was then relied upon in good faith by the officer to arrest an individual. So in that sense, it was a very serious mistake, and yet the Supreme Court found that it wasn't one that demonstrated systemic negligence, nor was it egregious or beyond the pale. So in your view, even if one were to find that the good-faith exception applied, does that take care of the particularity argument? The particularity argument is a threshold requirement, and in our view, it is satisfied in this case. No, you haven't answered my question. Is it necessary for us to make a separate ruling on particularity? No, Your Honor. You can tell me why you think the requirement is satisfied, but that is not my question. It is not, and the Supreme Court has made clear that the remedy is separate from the violation. So in this case, even if you were to find a Fourth Amendment violation, like in Leon, there was a lack of probable cause. If you were to find now that there was a lack of particularity, the fact that that violation occurred or that there is a Fourth Amendment infirmity is separate from the question of whether the good-faith exception would apply. Has the Supreme Court ever said so? You're inferring from Leon. Is there a case on point either from the court or from the circuit? Not that I'm aware of with regard specifically to particularity. However, I think the cases are quite clear that there are numerous and addressing numerous types of Fourth Amendment violations, an unconstitutional statute in Illinois v. Krull, the rescinded warrant in Herring, and even in Hynum v. North Carolina, a mistake of law in Davis reliance on circuit precedent. The Supreme Court has applied the good-faith exception broadly and extrapolating not very far from those principles, any violation of the Fourth Amendment's requirements would not preclude application of the good-faith exception. But the lack of particularity surely can bear on the presence or absence of good faith. It could bear on that. And in this case, I go back to the Supreme Court's decision in Carr, which is not a good-faith exception case. However, in that case involving a tracking warrant, the Supreme Court talked about what the requirements of particularity were and emphasized that there are many ways to – the point of particularity is to cabin the officer's discretion. And if a warrant is presented, even if the location is unknown, where in this it was, they didn't know where the computers, the activating computers were located, so long as there are other facts that cabin the executing officer's discretion or the deployment of the NIT, it would satisfy the particularity requirement. And the answer to Judge Lynch's question, as I gather it, because I don't think you gave her a direct answer, is that it's the government's position that were we to find that the conditions of the good-faith doctrine have been met, it is then unnecessary for us to go forward and ask the question whether the warrant was sufficiently particular. Yes. Okay. Yes. But you cite us no case which so holds. Not with respect to particularity. However, the doctrine of good-faith is well-established in the Supreme Court's precedents. Thank you. Mr. Kearney? Good morning. Good morning, Your Honor. J.W. Kearney, Jr., with Nate Dalcourt-Silver representing the appellee. May it please the Court. With your permission, I would like to focus my remarks on showing that the government did not act in good faith in this case. First of all, we look at the agent who was involved. He was far from a rookie. He was someone who had 19 years' experience. But even more than that, this was an application for search warrant that had direct involvement with both Department of Justice attorneys from Maine Justice and from the United States Attorney's Office. The agent is required by Fucillo from this court to have a reasonable knowledge about what the law prohibits and thereby his interaction with the DOJ and U.S. Attorney Office attorneys had to have given him this awareness because they were clearly aware of it. The DOJ had known that the type of warrant that the FBI wanted to use violated the limits set by Rule 41 and by the statute that created federal magistrate judges that limited their jurisdiction to the district in which they sat. They knew that a search by a net warrant would not be limited to the District of Virginia, but would go all over the country, indeed all over the world. The DOJ Computer Crime Guide itself flagged this problem for people in the government, such as the FBI and Assistant U.S. Attorneys. So they knew going into this that Rule 41 was likely to be an insurmountable problem. So they began the process to change Rule 41. I cited in my brief the minutes of the meeting in 2014 with the Criminal Rules Committee. And here is a quote from the minutes by the Deputy Attorney General who appeared before them. The use of anonymizing sites is a real problem. He explained that it might be possible to litigate and hope the courts will create an exception to the rule that on its face does not work with this situation. But the better approach is to come to the committee and change the rule that is creating this issue. That's what the Department of Justice did. You've got a two-edged sword with that argument. The other argument is the rule has been changed. The conduct which you said was illegal is now perfectly legal. If we are going to look at the deterrent effect on police misconduct, it seems to me your argument doesn't go very far because there is no deterrent effect. This is a one-time problem that has been solved by the change in the rule. So what's your response on that point? This warrant was invalid ab initio. Because the court did not have the authority from the Congress to issue this warrant because it exceeded the jurisdiction of a federal magistrate judge and it violated the Supreme Court rule of criminal procedure. That's a mistake the magistrate made in issuing the warrant, isn't it? Should we blame the magistrate rather than the FBI? No, your honor, for two reasons. First, the lawyers at high levels in the FBI and the Department of Justice were directly involved in this, creating this application and submitting it to the court. So to put the blame on the magistrate judge is inappropriate when the department clearly knew they were not authorized to seek this warrant. Moreover, I think that the magistrate judge was in fact misled. The Department of Justice, as I note in my brief, had applied for a warrant and the search was to occur at a location within the district and elsewhere outside the district. The warrant was not approved because it went beyond the jurisdiction of the court. So when they applied for it in Virginia, the application was different. All they talked about was we're going to search the server in Virginia. I honestly would be more interested in hearing your argument as to particularity. Whether the good faith doctrine takes care of the particularity issue. Your honor, the amicus who will follow me is going to focus exclusively on particularity. So if your honor can wait, I would prefer to keep going on bad faith. What would have been the effect here if the FBI had gone to a district judge instead of a magistrate judge? A magistrate judge has broader powers. A magistrate judge? I'm sorry, a district judge, I misspoke, has broader powers. So wouldn't a lot of the problems that you've raised been eliminated simply by presenting this application to a district judge? Quite possibly. So isn't that exactly the sort of mistake that the good faith doctrine was created for? No, your honor. Here's a miscalculation. They present this to a magistrate judge instead of a district judge. That was really, as far as I can see, the critical mistake here. Your honor, I think the U.S. Supreme Court faced an analogous situation in Gomez. A district judge delegated to a magistrate judge the selection of a jury in a felony case. In Gomez, the United States Supreme Court said it would reverse without even the necessity for the defendant to show prejudice. But Gomez dealt with the power of a magistrate judge. I'm not talking about here, I'm saying assume favorably to you that the magistrate judge lacked the authority to issue a warrant that had effect beyond the Eastern District of Virginia. Certainly had effect within that district, but beyond the Eastern District of Virginia. They could have cured that defect by the simple expedient of going to a district judge. So Gomez is a red herring. Oh no, that's not a fish dragged across the line to get a bloodhound to go in the wrong direction, and I'll tell you why, your honor. In Gomez, I suspect someone might have said, well, if they had selected a jury in front of the district court judge, there'd be no problem, would there? And the U.S. Supreme Court did not accept that evidence. Of course they didn't, because it's never been enough that a jury, illegally selected, was selected in good faith. That's not true of the issuance of a warrant. So that's why I think Gomez is a red herring. With all due respect, you and I use different bloodhounds. I can't talk to that. But the point I'm making, your honor, in seriousness, is that in Gomez, the magistrate judge exceeded the judge's authority. He did something that the Federal Magistrate Act did not allow him to do, and which the rule of criminal procedure did not allow him to do, and the U.S. Supreme Court's attitude was, end of discussion. That's right. And so here, what the magistrate judge in Virginia did was something jurisdictional. At the time, a circuit judge made this very clear in a concurring opinion, which I cite at length, and purely by coincidence, the circuit judge is Gorsuch. And he made the important point that when the Congress created the Act, or passed the Act creating Federal Magistrate judges, they put limitations on them. They could not do certain things. When the judge goes beyond that and issues a warrant, it's like a clerk of the district court issuing the warrant. He or she did not have the power. I submit, your honor, that this was a systemic error and an intentional violation of the law by the Department of Justice and the FBI, who's located in that department, and suppression is called for. I think one of the best decisions I've ever read is Ricciardelli, in which two members of this panel participated. And when they concluded by saying suppression of evidence seized by means of an invalid warrant is appropriate to compel respect for the constitutional guarantee in the only effectively available way, by removing the incentive to disregard it. Thank you. Thank you. Mr. Carney, before you sit down, I understand you're on your way back to a jury trial while you're trying in the superior court. Would you simply express our appreciation to the superior court judge for making time for you to appear here first? Thank you, your honor. And I know that I would speak on his behalf and my own behalf for the court's flexibility in allowing Mr. Toomey to schedule this argument first rather than when it was previously scheduled. I know both the judge, Liebensberger, and the jurors appreciate it. Thank you again very much. Mr. Rummel, good morning. Good morning. And may it please the court, Mark Rummel for Amici Electronic Frontier Foundation and the ACLU of Massachusetts. Your honors, a single warrant that purports to authorize the search of nearly 9,000 computers located in at least 26 different states and over 100 countries around the world, without naming or identifying a single one of those computers in the warrant itself, is no warrant at all. Nothing comparable, no comparable warrant would ever issue in the physical world. And, in fact, in this case, a warrant like this was unnecessary. The FBI was operating the website that it was investigating. It had a window into user activity on the site. It could see which users were posting which content or accessing which content at which time on which date. With this information, the FBI could have applied to a magistrate for a particularized warrant based on a particularized showing probable cause tied to particular users of this site. Counsel, it's been represented that you were prepared to speak to the proposition that, even if the requirements of the good faith doctrine are met, not a showing of particularity is nonetheless requisite. Your honor, unfortunately, we didn't take a position in our brief on I know you didn't take it in your brief, but you were here when you heard Mr. Kiney say that you were going to address that question. We certainly, in addressing particularity, I can do it in a general matter. Obviously, amici recognize and support the deterrent effect that comes with suppression and the exclusionary rule. To Judge Lynch's earlier question about why a deterrent effect matters, or why it's significant now that the rule has changed, the constitutional problems remain. Yes, your position has to be that the new amended rule is unconstitutional, at least potentially in its application. In a particular application, certainly. I don't think we take the position in this case that it's per se unconstitutional, but when a warrant like the one the Why wouldn't you? It's entirely meant to have warrants that will reach into users' computers, thousands of them, in order to send back a message with the identifying. Well, the rule doesn't speak to the quantity of computers that are searched. It could very well be the case that the FBI applied for a particular warrant under the new rule, targeting a particular user, and because particularity is context-dependent, it may be that in a particular application of the rule that it could be. Aren't you tying the government's hands when the user of the website, in this instance child pornography, takes all sorts of evasive measures using Tor and other devices to avoid being discovered? No, your Honor, our position is that it was the FBI's investigative choice to obtain a blanket warrant. That's a problem in this case, not the FBI's decision necessarily to obtain a warrant. The FBI is supposed to sit there and monitor this computer until this particular defendant pings on child pornography and then go ask for a particular warrant as to this particular defendant. Well, your Honor, they wouldn't even need to have waited necessarily. When they possessed the server, they had a history of user activity on the site, so they could have taken that information and applied for particular warrants. For past usage. Based on past usage, which is, in general, that is how warrants are issued. Even if the person has abandoned going to that website to look for pornography. That's true. In that instance, that's also the nature of an anticipatory warrant. In fact, it's one of the reasons that the warrant here ran afoul of the Fourth Amendment. There was no connection made at the time the warrant was issued between the triggering condition, the logging into the site, and a particular user or a particular computer. And so in that sense, the warrant here, I see I'm out of time. Well, answer this question for me. What are you really worried about? What do you think the implications of a finding here that there was sufficient particularity? What do you think it's going to lead to? Well, and this gets exactly to your question earlier about the rule change. There's little doubt in my mind that now that the rule has changed, the FBI will use this technique more and more. So it's important. In fact, it's imperative now that we place appropriate Fourth Amendment limitations on the government's ability to seek and obtain these types of warrants. I'm sorry. Give me a concrete example of something you would be worried about. Sure. The rule change had two parts. One, the ability to obtain a warrant when the user is concealing their location. A second is the ability to obtain a warrant in a so-called botnet. And that's where basically innocent users' computers are swept up in criminal activity unknowingly. If a warrant in this case is upheld that allows the search of thousands of computers based on a single warrant, it's quite likely that the FBI could turn around in a future case, obtain a single warrant to investigate a botnet and be allowed to search. But this is not a botnet case. It's absolutely not. But the Fourth Amendment principles apply regardless, and I could easily see the FBI citing precedent in one of these cases to support a warrant application in one of them. Of course they would. Yes. Yes. Okay. Thank you. If there are no further questions, thank you for allowing us to appear today, and I'd ask the Court to find that the warrant violated the Fourth Amendment. Thank you. Your Honor, just briefly on the issue of particularity and the merits of the amici's claim, the warrant in this case described in great detail the affidavit, explained exactly why there was probable cause to search each and every activating computer that logged into the Playpen child pornography website. And in that situation, they've established that no matter how many criminals were attempting to distribute, share, or view or download child pornography, there was probable cause to search each one. The location was unknown. It's true. But that does not mean that the warrant lacked particularity. As I recall the affidavit, the government's position, I think substantiated by the affidavit, is that there was no reason for anyone to contact this site except to procure child pornography. That is correct. Also, with regard to the point that the government could have done more with respect to the user logs, recall in the affidavit there was warning on the home page before a user logged in that said, do not use a real e-mail address. Do not put any information here that could be used to identify you. We will not identify you, and we will never send you e-mail. It was very clear that these were not real user names that could have led to the identity and location of these persons. So in this situation, the information provided in the affidavit substantiated probable cause and also because there was probable cause to search each user, the warrant was sufficiently particular. And with respect to the notion that good faith might not apply if there was a lack of particularity, if the good faith exception can apply to a lack of probable cause, the government sees no reason why the particularity would stand in a different place. And the court, the government therefore urges the court to reverse the district court suppression ruling. I'm not so certain that probable cause and particularity serve the same purposes. And amicus has argued to us that the implications of this for privacy concerns of people who use botnets are enormous. Whether there is probable cause by its nature depends on an individual case. Here the concern is about the larger gathering of information. Do you have anything to say in response to that? I can only speak to what I've read in the public documents that defendant has submitted and also my own review of those documents in terms of the Department's position. And that is that in a case of a botnet, there would be, like it is here, an affidavit presented to a judge explaining exactly why there would be probable cause to collect the information that is sought. And in this case, just to reemphasize, the information that was sought was location-enabling information. It was not content. And I do not know what a botnet search warrant would look like. But in order to satisfy the particularity requirement and probable cause, I would imagine that it would have to be similarly limited in the amount of information it's trying to obtain in order to apprehend the criminals that are committing the crime. Is this investigative technique used only in child pornography cases or is it used otherwise also? I'm only aware of child pornography cases from the warrants that have been unsealed and my understanding of this case and research involved. I imagine it could be used to apprehend criminals who are hiding their identities through anonymizing technology. Like a Silk Road incident. Correct. Has this been used in terrorist activities at all to link individuals who are part of the network? I believe that there have been NITs used in terrorist-type cases. I can't recall the name of one at this point. I recall reading that in the papers that were submitted in support of the amendment to the rule. If there are no further questions, we ask you to reverse the ruling below. Thank you.